**Ervin SCHAAF, Plaintiff,**

v.

**Charles DAHL, M.D., and Bone and Joint Center, P.C., Defendants.**

No. A1–04–59.

United States District Court, D. North Dakota, Northwestern Division.

Aug. 3, 2004.

Leo F.J. Wilking, Nilles Law Firm, Fargo, ND, for Plaintiff.

Michael Craig Waller, Fleck, Mather & Strutz, Ltd., Bismarck, ND, for Defendants.

## ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HOVLAND, Chief Judge.

Before the Court is the Defendants' Motion For Summary Judgment filed on May 21, 2004. For the reasons set forth below, the motion is denied.

### I. BACKGROUND

On February 15, 2001, the plaintiff, Ervin Schaaf, broke his right leg when he slipped and fell on ice while exiting a bus he had been operating in South Dakota. Upon arrival at St. Alexius Medical Center in Bismarck, North Dakota, the defendant, Dr. Charles Dahl, diagnosed the injury as an oblique fracture of the mid-shaft of his right tibia[1] with a comminuted[2] fracture of the fibula[3]. Dr. Dahl performed an

---

1. "The shin bone: the inner and larger bone of the leg below the knee." Dorland's Illustrated Medical Dictionary 1722 (27th ed., W.B. Saunders Co., 1988).

2. "Broken or crushed into small pieces." Id. at 363.

3. "The outer and smaller of the two bones of the leg, which articulates proximally with the tibia." Id. at 630.

open reduction surgical procedure internal fixation.[4] On February 18, 2001, Schaaf was discharged from St. Alexius Medical Center.

Schaaf returned for monthly examinations by Dr. Dahl. During each of those examinations, Schaaf complained that he felt his injured leg was externally rotated. Dr. Dahl confirmed that while Schaaf's leg did have an external rotation, it was nominal—between five and ten degrees. Given this amount of rotation, Dr. Dahl recommended against any corrective surgery.

On September 20, 2001, Schaaf again returned to Dr. Dahl for another examination. This time Schaaf walked and sat with a pronounced outward rotation of his injured right leg. Despite this appearance, Dr. Dahl measured the rotation to be between six and ten degrees. Once again, Dr. Dahl recommended against surgery but offered to refer Schaaf to another orthopedic surgeon. Schaaf followed Dr. Dahl's recommendation and did not proceed with corrective surgery.

On January 25, 2002, Schaaf sought the opinion of Dr. Nygaard at Medcenter One Health Systems. Dr. Nygaard measured a rotation of twenty-five to thirty degrees and recommended corrective surgery. Dr. Nygaard performed that surgery on February 14, 2002.

On February 4, 2003, Schaaf filed suit against Dr. Dahl alleging medical malpractice in the treatment of his broken leg. The Court dismissed the suit without prejudice on December 31, 2003, for failure to file an affidavit of an expert witness to support the allegations of professional negligence in accordance with Section 28–01–46 of the North Dakota Century Code.

Schaaf filed the present lawsuit on May 12, 2004. Dr. Dahl was served on May 13, 2004, and the Bone and Joint Center on May 14, 2004.

The Defendants have moved for summary judgment claiming the date Schaaf discovered his potential malpractice claim was on or before January 25, 2002—the date Schaaf sought a second opinion from Dr. Nygaard. As such, Dr. Dahl contends that the two-year statutory period for filing a claim ended on or before January 25, 2004, and Schaaf's claim is time-barred.

Schaaf contends that a genuine issue of material fact exists because Schaaf did not know of his injury, its cause, and of Dr. Dahl's possible negligence until on or before May 14, 2002. Alternatively, Schaaf asks the Court to adopt the doctrine of equitable tolling.

## II.  LEGAL DISCUSSION

Summary judgment is appropriate when, viewed in a light most favorable to the non-moving party, there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c); *Armstrong v. U.S.*, 366 F.3d 622, 625 (8th Cir.2004). A fact is "material" if it might effect the outcome of the case and a factual dispute is "genuine" if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The basic inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 252, 106 S.Ct. 2505.

The moving party has the initial burden of demonstrating to the Court there are no genuine issues of material fact. If the moving party has met this burden, the

---

4.  "Stabilization of fracture bony parts by direct fixation to one another with surgical wires, screws, pins, and plates." Dorland's Illustrated Medical Dictionary 637 (27th ed., W.B. Saunders Co., 1988).

non-moving party cannot simply rest on the mere denials or allegations in the pleadings. Instead, the non-moving party must set forth specific facts showing that there are genuine issues for trial. Fed. R.Civ.P. 56(e). A mere trace of evidence supporting the non-movant's position is insufficient. Instead, the facts must generate evidence from which a jury could reasonably find for the non-moving party. *Anderson*, 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202.

Here, the date of discovery of a potential claim against Dr. Dahl for alleged malpractice that resulted in up to thirty degrees of external rotation of Schaaf's right leg serves as the gravamen of the complaint. Based on the following discussion, the Court finds that reasonable minds could differ as to the date Schaaf knew or reasonably should have known of a potential claim for the professional negligence by Dr. Dahl in repairing Schaaf's broken leg.

"[U]nder diversity jurisdiction, we must interpret the forum state's law." *Ehlis v. Shire Richwood, Inc.*, 367 F.3d 1013, 1016 (8th Cir.2004) (applying North Dakota law in a product warning defects claim against an out-of-state pharmaceutical company). In North Dakota, "an action for the recovery of damages resulting from malpractice ... must be commenced within two years after the claim for relief has accrued." N.D.C.C. § 28–01–18(3). "The statute is silent on when an action accrues, and consequently the determination of when an action accrues is an issue for the court." *Schanilec v. Grand Forks Clinic, Ltd.*, 599 N.W.2d 253, 255 (N.D.1999).

■ North Dakota has adopted the discovery rule. See *Iverson v. Lancaster*, 158 N.W.2d 507, 510 (N.D.1968). "[T]he two-year statute of limitations begins to run when the plaintiff knows, or with reasonable diligence should know, of (1) the injury, (2) its cause, and (3) the defen-

dant's possible negligence." Shanilec, 599 N.W.2d 253, 255–56. Since "[t]he purpose of the discovery rule is to prevent the injustice of barring a claim before the plaintiff could reasonably be aware of its existence," *Wall v. Lewis*, 393 N.W.2d at 758, 761 (N.D.1986). the focus is upon whether the plaintiff has been apprised of facts which would place a reasonable person on notice that a potential claim exists. It is not necessary that the plaintiff be subjectively convinced that he has been injured and that the injury was caused by the defendant's negligence.

*Wheeler v. Schmid Laboratories, Inc.*, 451 N.W.2d 133, 137 (N.D.1990). "The discovery rule seeks to assure that the statute does not begin to run until a lay person with reasonable diligence becomes aware of a potential claim." *Froysland v. Altenburg*, 439 N.W.2d 797, 799 (N.D.1989) (stating as a matter of law that the statute of limitations could not be delayed until the injured person consults an attorney without rendering the statute meaningless).

■ Here, the Plaintiff's injury was the improper alignment of a fracture which prevented him from working, riding a horse, or operating a motor vehicle. The Court finds there are genuine issues of material fact as to the date when Schaaf knew, or with reasonable diligence should have known, of the injury, its cause, and most important, the possible negligence of the defendant, Dr. Dahl. It is unclear whether Schaaf knew or reasonably should have known of his potential malpractice claim on January 25, 2002, after receiving the diagnosis from Dr. Nygaard wherein he determined a much greater external rotation than had Dr. Dahl. Dr. Nygaard then performed corrective surgery on Schaaf on February 14, 2002. The Defendant contends that, "at the very latest," Schaff had notice of a potential claim by

January 25, 2002. However, this conclusory statement lacks support in the record.

Schaaf argues that the final outcome of the corrective surgery (May 2003) should be fixed as the time when his cause of action accrued. Because Schaaf experienced a delayed healing of the fracture, he argues that only upon full recovery could Dr. Dahl's actions be judged negligent. It is clear that reasonable minds could reach different conclusions as to when Schaaf knew of his injury, its cause, and the possible negligence of Dr. Dahl. This is not a case in which reasonable minds could draw but one conclusion as to whether Schaaf was aware of Dr. Dahl's possible negligence prior to May 14, 2002. Reasonable minds could easily determine that it was long after May 14, 2002 that Schaaf knew or reasonably should have known of Dr. Dahl's possible negligence.

Based on the evidence in the record, a jury could reasonably conclude that the cause of action accrued anytime between January 25, 2002 (the date of the initial consult with Dr. Nygaard) and May 2003 (the date Schaaf was released back to work by Dr. O'Regan). Just as a jury could determine Schaaf had notice of a potential malpractice claim by at least February 14, 2002, a jury could also determine that as of May 14, 2002, Schaaf was uncertain as to whether there had been possible negligence on the part of Dr. Dahl. The trial court's function at the summary judgment stage is not to weigh the evidence but simply to determine whether there are any factual issues to be resolved at trial. The Court finds there are critical issues of material fact which need to be resolved at trial by the jury as to the date when the cause of action accrued, i.e., the date by which Schaaf knew or with reasonable diligence should have known of (1) the injury, (2) its cause, and (3) Dr. Dahl's possible negligence.[5]

In light of the Court's ruling that there are genuine issues of material fact which preclude a grant of summary judgment, the Court need not address Schaaf's assertion that the doctrine of equitable tolling applies to the current case.

## III. CONCLUSION

The Court has carefully reviewed and considered all of the evidence, exhibits and arguments submitted in support of and opposition to the Defendants' Motion for Summary Judgment. The Court expressly finds there are genuine issues of material fact to be resolved at trial concerning when the cause of action accrued. It is appropriate for the jury to resolve this factual issue at trial rather than the Court. Accordingly, the Court DENIES the Defendants' Motion for Summary Judgment (Docket No. 4). The Plaintiff's request for oral argument is also DENIED (Docket No. 11).

IT IS SO ORDERED.

---

5. The first interrogatory that should be presented to the jury on the special verdict form is whether Schaaf knew, or with reasonable diligence should have known, of the injury, its cause, and Dr. Dahl's possible negligence on or before May 14, 2002. That is clearly a factual issue for the jury to resolve. If the interrogatory is answered in the affirmative, the case is subject to dismissal and is time-barred. If the interrogatory is answered in the negative, the jury will then decide issues of fault, proximate cause, and the recoverable damages, if any, to be awarded.